**UNITED STATES of America**

v.

**AMERICAN NATIONAL BANK AND TRUST CO. OF CHICAGO.**

No. 11257.

United States Court of Appeals
Seventh Circuit.

June 13, 1955.

———————

Jay Evans, Nashville, Tenn., for petitioners.

H. Brian Holland, Daniel A. Taylor, Donald P. Herzog, Rollin H. Transue, Ellis N. Slack, Alonzo W. Watson, and Carolyn Just, Washington, D. C., for respondent.

Before MARTIN, MILLER and STEWART, Circuit Judges.

924

Robert Tieken, U. S. Atty., Chicago, Ill., Paul A. Sweeney, Chief, Appellate Section, U. S. Dept. of Justice, Morton Hollander, Atty., Washington, D. C., Warren E. Burger, Asst. Atty. Gen., Samuel D. Slade, Atty., Dept. of Justice, Washington, D. C., Julian R. Wilheim, Sondra Kaplan, Attys., Dept. of Justice, Washington, D. C., of counsel, for appellant.

Carl S. Lloyd, Chicago, Ill., Weymouth Kirkland, Howard Ellis, John C. Butler, Chicago, Ill., for American National Bank & Trust Co. of Chicago, appellee.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

The Government brought this action against the defendant bank seeking to have restored to a special deposit account in the bank the sum of $276,855 which defendant had paid to its depositor, Erie Basin Metal Products, Inc., without first obtaining the counter-signature of an appropriate Government official. Both parties moved for summary judgment. The motion of plaintiff was denied and that of defendant allowed.

Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., authorizes the district court to enter summary judgment if it is clear that "there is no genuine issue as to any material fact" and that the moving party is entitled to judgment as a matter of law. Issues as to irrelevant facts, of course, are wholly beside the point. Consequently, our question is whether the trial court had before it any showing of a genuine issue as to any relevant fact. If not, it acted properly in entering summary judgment for defendant.

The Erie Basin Metal Products, Inc., hereinafter referred to as Erie, entered into a written contract with the Government's Armed Forces on May 18, 1945, to supply chemical shell bodies at a total price of $5,722,349.12. That contract, inter alia, provided that the Government might retain from amounts otherwise due the contractor any excessive profits of the latter. On May 19 the Government and Erie entered into a supplemental agreement, known in the record as the advance payment agreement, which provided for the advance by the Government to Erie of 30% of the total contract price, prior to and during performance. The Government agreed to advance not to exceed $1,716,704.70 to be deposited in a special account for application on the contract price from time to time as the work progressed. Withdrawals from the account were to be subject to the written approval of a designated contracting Government officer. The balance on deposit at any and all times was to stand as security for the advancements and the Government was to have a lien upon such balance "to secure the repayment of such advances" superior to any lien of the bank or any third person. Article 5 of the contract price contained an express provision that "if and when the contractor has, by means of deductions or otherwise, reimbursed the Government in full for payments made, any money remaining in the special bank account or accounts shall be free and clear of any lien hereunder and the bank or banks concerned shall have authority to pay same to the contractor and shall thereupon be relieved of any further obligation to the Government on account thereof."

On the 6th of June, 1945, the Chicago Procurement District of the Army Service Forces, acting through Colonel Lebkicher, wrote the bank, with regard to the deposit, that all withdrawals were to be signed by persons designated by the contracting officer, and that the account was to be handled "in accordance with the advance payment agreement." . The Government had sent a check to Erie,

who had then endorsed the same and deposited it with the bank in this special account, in the sum of $1,716,704.70. The bank was furnished with a certified copy of the resolution of the board of directors of Erie, providing that withdrawal should be signed by an Army officer and by an official of Erie. It seems clear from the agreement that the requirement of a signature of an Army officer was included in order to secure repayment of the money advanced to Erie by the Army under the terms and conditions specified in the advance payment agreement. The account remained inactive for some 6 years after 1945, with a balance remaining on deposit of $276,855.00.

The account having thus remained in status quo from 1945 to 1951, Arthur Andersen & Co., auditor for Erie, addressed the Government on June 22, 1951, reporting that it desired to confirm the fact that the advancements made by the Government in the amount of $1,716,-704.70 had been completely repaid in 1945 and that no balance remained owing the Government on the advancements thereafter. In response to this letter, on June 29, 1951, Colonel Searle, of the Chemical Corps of the United States Army and the Chicago Chemical Procurement District, replied, giving a detailed account of the total advancements made and the amounts repaid, showing that, as of September 24, 1945, all of the advancements had been fully repaid and that the Procurement Division of the Army had advised that the records showed that they had been fully repaid as of September 24, 1945. Following this, after receiving a copy of an amended resolution of Erie, the bank reported to Colonel Searle that, upon demand of the depositor and upon proof having been furnished of the repayment in full to the Government of all sums advanced to Erie under the advance payment agreement, it had on that day released to the depositor the balance in the amount of $276,-855.00 on deposit in the special account, pursuant to the clause in Article 5 of the advance payment agreement quoted above.

None of these facts is in dispute. It would seem clear, therefore, that unless there is merit in the Government's contention that it had a lien upon the balance in the special deposit account, in addition to its right to be reimbursed for all of its advancements, to secure any sums that might become due from Erie for excess profits, the court committed no error in entering judgment. It is at this point that the parties come into sharp conflict as to the interpretation of the documents mentioned and the rights of the Government thereunder.

It is clear that the deposit letter to the bank disclosed an intent that treatment of the special deposit was to be in accord with the advance payment agreement. Indeed, it expressly so stipulated. It is clear also that that agreement provided without ambiguity that when and if it appeared that Erie had fully repaid the advancements, all rights of the Government in the deposit ceased. In other words, the advancement agreement clearly contemplated the advancement by the Government of a part of the purchase price of the goods purchased and for reimbursement of the same, and further that when those advancements had been fully repaid, the rights of the Government in the special deposit would no longer exist.

But the Government insists that that deposit should stand also as security for the payment of any sum that might be found due from Erie to the Government for excess profits, despite the fact that no such provision was contained in the letter of instructions to the bank, or in the special advancement contract to which that letter referred and in accord with which it was made. This led Judge Campbell to decide that, as the bank was in no wise a party to the supply agreement, any controversy between the Government and Erie as to possible liability of the latter for excess profits was something beyond the terms governing the special deposit and wholly irrelevant in-

sofar as the relationship of the Government and the bank was concerned. With this analysis we agree. Whether there is a controversy now, or whether there will be one hereafter, between the Government and Erie as to whether the latter is indebted to the Government on account of excessive profits, is wholly irrelevant and immaterial to the controversy between the Government and the bank. The Government caused the Erie special deposit to be created; it provided only that it was to be handled in accord with the advancement contract, which in turn provided that when the advancements had been fully repaid, the restrictions upon withdrawal of the deposit would come to an end.

At the hearing, in response to defendant's request, the Government produced a transcript of the record of its account with Erie previously referred to in the letter to Arthur Andersen & Co., which showed a balanced account with nothing owing on the advancements. Attached to this record, however, purporting to be in the handwriting of a United States officer, was a statement that the $276,-855 still on deposit in the bank, even though the advance payments had been liquidated, was being retained "to satisfy demands of the Secretary of War for security for renegotiation." The statement, however, includes the words that "the account, so far as advance payments are concerned, is closed." Knowledge of this claim of the Government to be entitled to look to the special deposit for satisfaction of excess profits demands under the original supply agreement, did not come to the defendant's attention before the trial. At any event, the statement was wholly immaterial, for it related to a demand of the Government which was not included in the advancement agreement which controlled the deposit, and under which, when the advancements were fully repaid, nothing remained due the Government from the deposit.

Plaintiff complains of the action of the district court in refusing its request for leave to amend its complaint. It is ob-

vious from the court's decision that its order in this respect was due entirely to its analysis, to which we have referred, to the effect that any claim for excessive profits was foreign to the relationship between the bank and the Government; foreign to the deposit agreement, and foreign to the advancement contract. Being irrelevant and immaterial, it was not proper subject matter for an amendment to a complaint against the bank. With this reasoning we likewise agree.

We have examined carefully the documents and evidence submitted. There may have been a dispute as to excess profits as between Erie and the Government, but there was no dispute of genuine issues of fact as to any matters relevant or material to the controversy between the bank and the Government.

The judgment is affirmed.